USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/12/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MIGUEL P. QUINONES,                                    :
                                                       :      REPORT AND RECOMMENDATION
                                                       :
                              Plaintiff,               :      10 Civ. 6195 (JGK) (JLC)
           -v.-                                        :
                                                       :
POLICE DEPARTMENT OF THE CITY                          :
OF NEW YORK et al.,                                    :
                                                       :
                              Defendants.              :
-------------------------------------------------------x

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable John G. Koeltl, United States District Judge:**

Plaintiff Miguel P. Quinones ("Quinones") brought this action pursuant to 42 U.S.C. §

1983, asserting violations of his constitutional rights arising from an allegedly false arrest in the

Bronx on February 18, 2010 by various members of the New York City Police Department.

After an answer was filed and an initial pre-trial conference held, the case was referred to me for

settlement. On December 1, 2011, after a lengthy settlement conference at which Quinones, who

had originally filed his suit pro se, was represented by retained counsel, the parties reached a

settlement that was set forth on the record. Thereafter, the Court issued an order of

discontinuance and judgment was entered. Quinones, who is again proceeding pro se, now

moves to set aside the settlement agreement and judgment, vacate the order of discontinuance,

and restore the action to "active" status. Defendants cross-move to enforce the settlement

agreement. Quinones' now former counsel seeks to enforce a charging lien on the settlement.

For the reasons set forth below, I recommend that the Court deny Quinones' motion, grant

Defendants' cross-motion, and enforce the lien to the extent that counsel receive one-third of the settlement proceeds.[1]

## I.   **Background**

### A.   Factual and Procedural History

Quinones, proceeding pro se, commenced this suit by filing a complaint on or about August 18, 2010 (Doc. No. 2). Plaintiff subsequently retained Richard Borzouye, Esq. ("Borzouye"), who filed a notice of appearance on July 11, 2011 (Doc. No. 14).[2] Borzouye filed an amended complaint on Quinones' behalf on September 26, 2011 ("Amended Compl.") (Doc. No. 22). The amended complaint alleged that Quinones had been falsely arrested in the Bronx by members of the New York City Police Department on February 18, 2010. Amended Compl. ¶¶ 12-34.

Following an order referring the case for settlement (Doc. No. 20), the Court scheduled a settlement conference for December 1, 2011 (Doc. No. 24). According to counsel for Defendants, Quinones' counsel made an initial demand of $1 million in advance of the

---

[1]   Absent consent by the parties pursuant to 28 U.S.C. § 636(c) to proceed before a magistrate judge, where the motion presented is of a dispositive nature, such as enforcing (or vacating) a settlement, as here, a magistrate judge must issue a report and recommendation subject to de novo review. See 28 U.S.C. § 636(b)(1)(B); Waite v. Schoenbach, No. 10 Civ. 3439 (RMB) (JLC), 2011 WL 3425547, at *1 n.1 (S.D.N.Y. Aug. 5, 2011).

[2]   Another attorney, Joseph Rakofsky, Esq., also filed a notice of appearance on Quinones' behalf (Doc. No. 9), but made no further appearances and did not attend the settlement conference. I directed Rakofsky to file a motion to withdraw in light of Quinones' renewed desire to proceed pro se (Doc. No. 37), but Rakofsky never responded. Quinones advised the Court at a hearing held on January 4, 2012 that he had released Rakofsky as his counsel. Declaration of Assistant Corporation Counsel Noreen Stackhouse dated January 27, 2012 ("Stackhouse Decl.") (Doc. No. 41), Exhibit E (Transcript of Proceedings dated January 4, 2012 ("Jan. Tr.")), at 24:6-7. (See also Doc. No. 51).

conference. Stackhouse Decl. ¶ 11. In response, Defendants offered $7,500, which Quinones'

counsel rejected. Id. ¶ 12.

      B.     The Settlement Conference and its Aftermath

      The parties appeared for a settlement conference on December 1, 2011. After several

hours of negotiation, the parties agreed to settle the case for $25,000 inclusive of all fees and

costs. Id. ¶¶ 13-14. Quinones had raised concerns about settling his case during the course of

the settlement conference, and accordingly the Court put the terms of the settlement on the

record to confirm that both parties were agreeable to the settlement. See Stackhouse Decl.,

Exhibit C (Transcript dated December 1, 2011 ("Dec. Tr.")). After confirming the terms of the

settlement with counsel for both sides, the Court asked Quinones whether he understood the

terms of the settlement and whether he agreed to them. Dec. Tr. at 3:10-13. After a colloquy

with Quinones, in which he expressed his view that he was "obligated" and "forced" to settle his

case (Dec. Tr. at 3:16-17, 4:9), the Court had the following exchange with Quinones:

> THE COURT: Do you understand that this will be a settlement of all your claims in this lawsuit and that you can never bring another lawsuit about the incident that gave rise to this lawsuit?
>
> MR. QUINONES: I'm forced to because I was told there's no records, so, and –
>
> THE COURT: Mr. Quinones, we've talked about this off the record several times, and I want to make sure the record is clear –
>
> MR. QUINONES: I understand that.
>
> THE COURT: -- that you have not been forced to settle either by the Court –
>
> MR. QUINONES: For what I've been told.
>
> THE COURT: -- or by your lawyer. Are you saying that I have forced you to settle?
>
> MR. QUINONES: No, no, your Honor. Your service is excellent.

3

THE COURT:  Are you saying that your lawyer has forced you to settle?

MR. QUINONES:  Due to the circumstances that I was told, there's no record of what
                          I'm saying, I'm forced to settle for $25,000, your Honor.  I have to
                          accept it.

THE COURT:  You have to accept it because you want to accept it?

MR. QUINONES:  I have to accept it because there's no evidence, they say.

THE COURT:  Well, that's -- I want the record to be crystal clear –

MR. QUINONES:  Yes.

THE COURT:  -- because I don't want there to be any motions about this down the road
                     that you feel that either your lawyer or the Court forced you to settle.

*    *    *

THE COURT:  You have an absolute choice not to settle today.  You have an absolute
                     choice not to settle.  And if you want not to settle, you do not have to
                     settle.  Do you understand that?

MR. QUINONES: No, I'm not –

THE COURT:  And we have a court reporter making a record for precisely this reason,
                     because we've discussed this issue at some length and I don't want you to
                     use –

MR. QUINONES:  The court –

THE COURT:  -- I don't want you to use the word "force" because you are not being
                     forced.

*    *    *

THE COURT:  Mr. Quinones, this is the last time I'm going to ask you on the record.

THE COURT:  Mr. Quinones, do you want to settle your case today for $25,000 or not?

MR QUINONES:  We have to.

THE COURT:  So that's a yes?

*    *    *

THE COURT: I need a yes or no. Yes or no?

MR. QUINONES: Yes.

Dec. Tr. at 4:5-5:11; 7:13-23; 9:8-9, 12-15, 18-19.

Following this colloquy, the Court made a finding on the record that Quinones had agreed to settle voluntarily and of his own free will. Dec. Tr. 9:22-25.

On December 6, 2011, having been informed of the settlement, Judge Koeltl, the district judge to whom the case is assigned, entered an order of discontinuance (Doc. No. 25). Two days later, the parties submitted a fully executed stipulation of settlement and order of dismissal, which was "so ordered" by Judge Koeltl (Doc. No. 26). The Clerk entered judgment on December 15, 2011 (Doc. No. 30).

C.     The Current Motions

Following these proceedings, Quinones sent a letter to the Court, received on December 7, 2011, seeking to invalidate the settlement and to discharge his attorney.[3] In light of Quinones' desire to discharge his attorney, Borzouye filed a motion to withdraw as counsel and a petition to enforce a charging lien on the settlement (Doc. No. 33). Accordingly, upon a second referral from Judge Koeltl (Doc. No. 27), the Court scheduled a conference on January 4, 2012 to discuss these issues (Doc. No. 28).

At the January 4 conference, Quinones expressed his desire to have his case reopened, to discharge his attorney, and to proceed pro se in opposing Defendants' motion to enforce the settlement. Jan. Tr. at 3:8-9 (requesting that Borzouye no longer represent him); 9:19-22 (stating his intention to proceed pro se); 3:14-19; 8:13-15 (requesting that case be reopened). Defendants

---

[3]     Quinones has sent several other letters both to me and to the district judge, most of which are largely unintelligible, but all express a desire to vacate the settlement.

5

indicated their opposition to reopening the case, Jan. Tr. 8:19-9:2, and advised the Court that

Quinones and his attorney had not received the settlement proceeds only because Quinones had

not provided a general release. Jan. Tr. 11:10-18. Borzouye advised the Court that he was

seeking to enforce a lien on the settlement pursuant to his retainer agreement with Quinones,

which entitled Borzouye to 40 percent of the settlement proceeds (i.e., $10,000 of the $25,000

settlement). Jan. Tr. 13:12-25.

      Following the conference, the Court issued an order granting Borzouye's motion to

withdraw as counsel in accordance with Local Civil Rule 1.4, and set a schedule for the parties'

respective motions regarding the settlement (Doc. No. 37). Defendants have moved to enforce

the settlement (Doc. No. 40), contending that the parties entered into a valid and equitable

agreement to settle the case. Defendants' Memorandum of Law in Support of Their Motion to

Enforce the Settlement Agreement of the Parties dated January 29, 2012 (Doc. No. 42), at 4-10.

Quinones has filed a two-page document styled as a Motion to Vacate Judgment and Restore

Case on the Calendar (Doc. No. 48), which the Court construes as a motion pursuant to Rule

60(b) of the Federal Rules of Civil Procedure seeking relief from a judgment. The gist of

Quinones' motion (and his correspondence to the Court (see, e.g., Doc. No. 46)) is that the

stipulation of settlement and order of dismissal was "doctored up" by counsel for Defendants,

and that Quinones' counsel withheld the amended complaint and other information from him

prior to the settlement conference, thus "falsely representing" him.[4] Relying on New York State

---

        [4]     Quinones also seems to contend that Borzouye works in the same building of a law firm (with which he is not affiliated) that is representing a defendant in an unrelated litigation in which Quinones is a party, and therefore had a conflict such that he should not have represented him in this case. (Doc. No. 46.) This allegation is frivolous, and has no bearing on the pending motions.

Judiciary Law § 475, Borzouye has moved to enforce a charging lien against the settlement

proceeds (Doc. No. 33; <u>see also</u> Doc. No. 34).

## II.   **Discussion**

### A.   <u>Applicable Standards</u>

Liberally construed, Quinones has moved to set aside the settlement agreement and

judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which provides, in

relevant part:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; [or] . . .
>
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party.

Fed. R. Civ. P. 60(b)(1), (3).

As a threshold matter, the Second Circuit has not "explicitly held whether state contracts

law, as opposed to federal common law, applies to agreements settling federal claims."

<u>McNamara v. Tourneau, Inc.</u>, 464 F. Supp. 2d 232, 237 (S.D.N.Y. 2006); <u>see also</u> <u>Monaghan v.</u>

<u>SZS 33 Assocs., L.P.</u>, 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) (assuming, "without deciding, that

New York law provides the rule of decision for determining the validity of the oral settlement

agreement"). Nonetheless, the Circuit has often observed that with respect to fundamental

contract principles, there is no material difference between New York and federal law. <u>See, e.g.</u>,

<u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d 320, 322 (2d Cir. 1997). "In practice . . .

both the Second Circuit and its district courts have applied state law to settlements of federal

claims, in part because there appear to be no material differences." <u>McNamara</u>, 464 F. Supp. 2d at 237.

Under New York law, a settlement agreement is interpreted according to general principles of contract law. <u>Powell v. Omnicom</u>, 497 F.3d 124, 128 (2d Cir. 2007). Settlement agreements are strongly favored by New York courts and "may not be lightly cast aside." <u>Willgerodt ex rel. Majority Peoples' Fund for 21st Century, Inc. v. Hohri</u>, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). It is well-settled that a settlement agreement is presumptively binding and conclusive. <u>Powell</u>, 497 F.3d at 128 (citation omitted). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." <u>Id.</u> (citation omitted). "Parties [such as those here] may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." <u>Id.</u> at 129 (citing <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78, 80 (2d Cir. 1985)). Even if the agreement is never reduced to writing, it is enforceable as long as it was "voluntary, clear, explicit, and unqualified" when entered on the record in open court. <u>Id.</u> (citing <u>Role v. Eureka Lodge No. 434</u>, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam)).

In order to overcome the presumption of enforceability and set aside a settlement agreement under New York law, a movant bears the burden of establishing either (1) unilateral mistake coupled with fraudulent concealment by the knowing party, or (2) mutual mistake. <u>Chimart Assocs. v. Paul</u>, 66 N.Y.2d 570, 573 (1986); <u>see also</u> <u>Raghavendra v. Trustees of Columbia Univ.</u>, 686 F. Supp. 2d 332, 341 (S.D.N.Y. 2010), <u>vacated in part and remanded in part on other grounds by</u> 434 F. App'x 31, 32 (2d Cir. 2011). Because Quinones has not

8

demonstrated either fraud or mutual mistake (or inadvertence, surprise, or excusable neglect), I

recommend that the Court deny his motion to set aside the settlement agreement.

      B.    <u>There Is No Basis To Set Aside The Settlement Agreement</u>

      Quinones appears to argue that the judgment should be vacated because his attorney did

not represent his interests properly, and because Defendants withheld information from him.  At

the January 4, 2012 hearing, Quinones stated as follows:

> With respect, if the defendant attorney in the room -- I was lied to.
> Statements that there's no documents that could be produced from
> the records of internal affairs, that, to me, is erroneous.  It's hard
> for me to believe that.  And did he [Borzouye] not bother to
> request evidence in favor of the case to proceed on.  He was not
> helpful.  I was falsely represented.  That's my motion.

Jan. Tr. at 18:6-12.

      These allegations are insufficient to justify granting Quinones' motion.  In order to

demonstrate fraud, a movant "must allege a representation of material fact, the falsity of the

representation, knowledge by the party making the representation that it was false when made,

justifiable reliance by the [movant] and resulting injury."  <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d

273, 291 (2d Cir. 2006) (citation omitted).  The Second Circuit has made it clear that "each

element of a fraud claim must be shown by clear and convincing evidence."  <u>Banque Arabe et</u>

<u>Internationale d'Investissement v. Md. Nat'l Bank</u>, 57 F.3d 146, 153 (2d Cir. 1995) (citation

omitted); <u>see also Davimos v. Halle</u>, No. 03 Civ. 9199 (JGK), 2006 WL 859368, at *3 (S.D.N.Y.

Mar. 31, 2006).

      Quinones has not established any of these elements.  He has not identified any particular

representation of a material fact that was made to him, much less the falsity of that

representation or knowledge that it was false.  All Quinones seems to be contending is that his

9

attorney did not pursue evidence that might have supported (or potentially strengthened) his case, and that Defendants may not have produced evidence that they had about the incident that gave rise to his lawsuit. These allegations do not come close to satisfying his burden under Rule 60(b)(3).

Moreover, on the record before the Court, Quinones cannot establish mistake, inadvertence, surprise, or excusable neglect to warrant relief under Rule 60(b)(1). It is well-settled that "'[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.'" Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C., No. 10-CV-0261 (JS) (AKT), 2011 WL 2532914, at *5 (E.D.N.Y. June 23, 2011) (quoting Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986)). And, "[m]ore particularly . . . an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." Id. (citation and quotations omitted). This is because "an attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary. To rule otherwise would empty the finality of judgments rule of meaning." Id. (citation and quotations omitted). In order to obtain relief under Rule 60(b)(1), Quinones would have to show much more, such as that his counsel's "failures [were] so egregious and profound that they amount[ed] to the abandonment of [his] case altogether, either through physical disappearance . . . or constructive disappearance." Id. Quinones makes no such allegations. He is simply dissatisfied, in retrospect, with the outcome of his case, believing that additional evidence could have been developed to support his claims, thus making for a potential higher recovery. However, he understood the choice he and his attorney were making in settling the case for

$25,000, and said so explicitly on the record.  Quinones had every opportunity to back out of the settlement but chose not to do so.  His attempt to do so now by invoking Rule 60 should fail.

    C.    <u>The Settlement Agreement Is Enforceable</u>

       Defendants cross-move to enforce the settlement agreement and the judgment.  The settlement agreement was placed on the record after the settlement conference on December 1, 2011, and then memorialized in a stipulation and order of settlement and dismissal signed by counsel and approved by the Court on December 8, 2011.  The Court is obligated to enforce the agreement as entered on the record and memorialized in the stipulation if it satisfies the test for enforceability.  <u>See</u>, <u>e.g.</u>, <u>Meetings & Expositions, Inc. v. Tandy Corp.</u>, 490 F.2d 714, 717 (2d Cir. 1974) ("[T]he district court had not only the power but the duty to enforce a settlement agreement which it had approved.");  <u>Lindner v. Am. Express Corp.</u>, No. 06 Civ. 3834 (JGK), 2007 WL 1623119, at *3 (S.D.N.Y. June 5, 2007).  While the Second Circuit has not definitively ruled whether state or federal law applies in determining whether an oral settlement agreement is enforceable, as noted above, both the Second Circuit and district courts in New York look to New York law to determine whether a settlement agreement should be enforced, even in federal-question cases such as this one.  <u>See</u>, <u>e.g.</u>, <u>Monaghan</u>, 73 F.3d at 1283 n.3 ("We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement.");  <u>Silas v. City of New York</u>, 536 F. Supp. 2d 353, 357-58 (S.D.N.Y. 2008).

       The settlement in this case was placed on the record in open court and then memorialized in a written agreement.  Turning to the oral agreement first, it is well-settled that "[p]arties can enter into binding oral agreements."  <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (JGK), 2011 WL 309061, at *3 (S.D.N.Y. Feb. 1, 2011), <u>aff'd</u> No. 11-1396-cv (summary order) (2d Cir.

11

Apr. 12, 2012) (citing <u>Winston</u>, 777 F.2d at 80).  "Where the parties intend to be bound, an oral

settlement of a litigation is binding even if a party later changes his or her mind."  <u>Id.</u> (citing

<u>Powell</u>, 497 F.3d at 129-30).  Indeed, the Court "must enforce a binding oral agreement,

notwithstanding that [Quinones] may have had a change of heart."  <u>Foster v. City of New York</u>,

No. 96 Civ. 9271 (PKL), 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000) (citation omitted).

Here, after much back and forth with the Court, Quinones unequivocally affirmed that he wished

to settle his case for $25,000.  Moreover, because the parties executed a written agreement, the

Court is not required to examine whether the parties intended to be bound by their oral

agreement.  <u>See Winston</u>, 777 F.2d at 80 (listing factors to consider in absence of written

agreement) (citations omitted).

   As for the written agreement, it is not clear if Quinones is even challenging whether

Borzouye had authority to sign the stipulation and order of settlement, since he was still counsel

of record at the time.  To the extent Quinones' submissions are liberally construed to do so, any

such argument should fail.  "Although the decision to settle a case rests with the client, courts

will presume that an attorney who enters into a settlement agreement has the authority to do so."

<u>Conway v. Brooklyn Union Gas Co.</u>, 236 F. Supp. 2d 241, 247 (E.D.N.Y. 2002) (citing <u>In re</u>

<u>Artha Mgmt., Inc.</u>, 91 F.3d 326, 329 (2d Cir. 1996)).  It is well-settled that "[t]he burden of

proving that an attorney entered into a settlement agreement without authority is not

insubstantial."  <u>United States v. Int'l Bhd. of Teamsters</u>, 986 F.2d 15, 19 (2d Cir. 1993) ("<u>IBT</u>")

(citation omitted).  Moreover, courts have "consistently recognized that an attorney may bind his

or her client to a settlement agreement so long as the attorney has apparent authority."  <u>Conway</u>,

236 F. Supp. 2d at 247 (citing <u>Fennell v. TLB Kent Co.</u>, 865 F.2d 498, 502 (2d Cir. 1989)).  In

this context, "apparent authority" means "the power to affect the legal relations of [the client] by

transactions with third persons, professedly as agent for the [client], arising from and in accordance with the [client's] manifestations to such third persons." Id. (citing IBT, 986 F.2d at 20). "[I]f an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt this authority, then the settlement will be upheld." Id. (citation omitted).

It is clear that Borzouye had apparent authority from Quinones, and he stated as much in open court at the December 1 hearing at which the Court confirmed the terms of the settlement. Borzouye said explicitly: "As far as the settlement offer of 25,000, it's my understanding that was the amount that was offered by the defendant City of New York, and I've been told the plaintiff has accepted." Dec. Tr. at 2:22-25. Quinones did not contradict him at that time, and eventually confirmed himself that he was agreeing to the settlement. It was further discussed at the December 1 hearing that, as is the City of New York's practice in these circumstances, the parties would enter into a written stipulation and order of settlement and dismissal to be submitted to Judge Koeltl. Dec. Tr. at 10:15-18. Nothing that occurred at the conference would have given counsel for Defendants any reason to doubt that she should send the stipulation to Borzouye for execution, or to expect that Quinones would seek to vacate the settlement (or, liberally construed, withdraw his attorney's authority to settle). Quinones has therefore failed to meet his burden of proving that Borzouye lacked apparent authority, and the stipulation and order of settlement is enforceable.[5]

    D.    <u>The Petition To Enforce The Lien Should Be Granted</u>

---

[5]    To the extent that, in order to avoid the enforcement of the settlement agreement, Quinones may be claiming that he was mistreated or subject to duress by his counsel during the settlement conference, it is notable that "dissatisfaction or disagreement with counsel during settlement negotiations does not constitute duress." Raghavendra, 686 F. Supp. 2d at 344 (rejecting claim of duress where plaintiff was "brow-beaten" and "shouted down" during negotiations).

Having recommended that the settlement be enforced, the remaining issue is whether the Court should exercise supplemental jurisdiction to enforce Borzouye's charging lien against the settlement under New York Judiciary Law § 475, which governs attorneys' charging liens in federal courts sitting in New York. Figueroa v. City of New York, No. 05 Civ. 9594 (JGK), 2011 WL 3423390, at *2 (S.D.N.Y. Aug. 4, 2011) (citing Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998)).  Section 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

As Judge Koeltl observed in Figueroa:

> The charging lien is a lien against any judgment or settlement in favor of the client in an action in which the attorney represented the client.  The lien created by Section 475 is enforceable in federal courts in accordance with its interpretation by New York courts.  The New York Court of Appeals has stated that the "statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action."

2011 WL 3423390, at *2 (citations and quotations omitted).  Moreover, it is well-settled that an attorney who terminates his representation for good cause is entitled to enforce a charging lien under Section 475.  Id. (citing Itar-Tass, 140 F.3d at 451-52).  In addition, absent "exceptional

14

circumstances," the Second Circuit has required district courts to exercise jurisdiction over Section 475 claims in these circumstances. Itar-Tass, 140 F.3d at 448.

In this case, the Court permitted Borzouye to withdraw upon a finding that there were irreconcilable differences between attorney and client. This constitutes "good cause," and accordingly Borzouye is not precluded from enforcing a charging lien under Section 475 by virtue of his withdrawal. See, e.g., Figueroa, 2011 WL 3423390, at *3 (court permitted attorney to withdraw upon finding that continued representation would constitute ethical violation and this constituted "good cause" sufficient to permit enforcement of charging lien).

Quinones has not interposed any objection to the motion to enforce the lien. During the course of the proceedings, both on December 1, 2011 and January 4, 2012, he complained about his attorney's conduct during the settlement conference and suggested he might file a grievance against him. See, e.g., Dec. Tr. at 6:1-20. But any such complaint does not relate to whether a charging lien is valid.

As for the amount of the charging lien, Borzouye proffers that his retainer agreement with Quinones provided that he would receive 40 percent of all amounts collected, whether by settlement or otherwise. See Borzouye Affirmation in Support of Motion to Withdraw as Counsel and Petition to Enforce Charging Lien dated January 2, 2012 ("Borzouye Aff."), ¶ 3 (Doc. No. 34).[6] As the Court noted in Figueroa, "[w]here the amount of a charging lien has been fixed by agreement, execution is appropriate on the judgment for the amount agreed to by the parties, subject to the limitation that, because a charging lien is an equitable remedy, the amount of the lien must be 'fair.'" Figueroa, 2011 WL 3423390, at *4 (quoting Sutton v. N.Y. City

---

[6]        Borzouye has not provided the Court with a copy of the retainer agreement.

Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006)) (additional citations omitted).  In assessing the

fairness of a charging lien, a court looks to "the terms of the percentage agreement, the nature of

the litigation, difficulty of the case, time spent, amount of money involved, results achieved and

amounts customarily charged for similar services in the same locality."  Id. (citation omitted).

      In considering these factors, the Court observes that 40 percent is a higher contingency

fee than is typical in most Section 1983 cases, in which the usual percentage is one-third.  See,

e.g., id. at *4 (one-third contingency fee); 22 N.Y.C.R.R. § 603.7 (one-third contingency fee

specifically provided for by New York Court Rules in personal injury and property damage

cases); Gibbs ex rel. Richer v. City of New York, No. 09-CV-4638 (FB) (ALC), 2011 WL

3876973, at *3 (E.D.N.Y. Aug. 8, 2011) (one-third contingency fee not unreasonable in civil

rights litigation).[7]  Moreover, this was not a complicated case, nor did Borzouye spend

significant time litigating the case.  He filed a notice of appearance in July, 2011; attended a

status conference before Judge Koeltl in September, 2011; filed an amended complaint in

September, 2011; and prepared for and attended a settlement conference in December, 2011.  It

does not appear that any discovery was taken.  While Borzouye provides no documentation to

support the assertion, he contends that he performed more than 25 billable hours at a rate of $600

per hour, thus making his fees "over $25,000," the total amount of the settlement.  Borzouye Aff.

---

[7]     That said, there does not appear to be anything necessarily improper in a 40 percent contingency fee under Rule 1.5 of the New York Rules of Professional Conduct, at least in certain circumstances.  See Lawrence v. Miller, 11 N.Y.3d 588, 593, 596 (2008) (40 percent fee not unconscionable as a matter of law, but amount of fee should be proportionate to value of services rendered); Ross v. Mitsui Fudosan Inc., No. 97 Civ. 0975 (PKL) (RLE), 1999 WL 799534, at *2 (S.D.N.Y. Oct. 6, 1999) ("Courts have found forty or fifty percent contingency fee agreements consciable in certain circumstances, such as when the litigation is complex, lengthy or specialized in knowledge.") (citing cases).

¶ 3.[8] The Court believes both the number of hours as well as the rate to be high, especially given the fact that Borzouye has only been admitted to practice since 2004. Cf. Barbour v. City of White Plains, No. 07 Civ. 3014 (RPP), 2011 WL 2022884, at *8 (S.D.N.Y. May 24, 2011) (awarding hourly rate of $450 to attorney with 22 years of legal experience, with 10 of those years focused on civil rights).[9]

For these reasons, I recommend that an equitable result would be that Borzouye receive one-third of the settlement proceeds (or $8,333), rather than 40 percent of it (or $10,000), once Quinones has provided a general release.

## III.   **Conclusion**

For the foregoing reasons, I recommend that the Court deny Quinones' motion, grant Defendants' cross-motion, and enforce the lien to the extent that counsel receive one-third of the settlement proceeds.

## **PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to

---

[8]     Presumably Borzouye means $15,000, not $25,000.

[9]     Borzouye's bar admission is listed on his firm website www.borzouyelaw.com.

Judge Koeltl.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  <u>See</u> <u>Thomas v. Arn</u>, 474

U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &</u>

<u>Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).  If Quinones does not have access to cases cited

herein that are reported on Westlaw, he should request copies from Defendants.  <u>See</u> <u>Lebron v.</u>

<u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

Dated:  New York, New York
         April 12, 2012

JAMES L. COTT
United States Magistrate Judge

**Copies of this Report and Recommendation have been sent by ECF to counsel of record
and by mail to:**

Miguel P. Quinones
870 East 162nd Street #2M
Bronx, New York 10459

18